FILED
CLERK
1:38 pm, Jul 08, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


U.S. BANK NATIONAL              *    Case No. 19-CV-1101(ENV)
 ASSOCIATION,                   *
                                *
          Plaintiff,            *    Long Island Federal
                                *     Courthouse
                                *    100 Federal Plaza
     v.                         *    Central Islip, NY  11722
                                *
JOSEPH P. TAPLER, et al.,       *    January 9, 2024
                                *
          Defendants.           *
                                *
* * * * * * * * * * * * * * * *

          TRANSCRIPT OF CIVIL CAUSE FOR HEARING
         BEFORE THE HONORABLE STEVEN L. TISCIONE
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            ADAM BRIAN SPEREGEN, ESQ.
                              Gross Polowy, LLC
                              900 Merchants Concourse
                              Westbury, NY 11590

For the Defendant, Pro Se:    JOSEPH P. TAPLER
                              49 Circuit Road
                              Bellport, NY 11713




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

Fiore Reporting and Transcription Service, Inc.
Shelton, CT 06484 (203)732-6461

1  (Proceedings commenced at 12:32 p.m.)

2  THE CLERK: Civil cause for hearing, U.S. Bank
3  National Association vs. Tapler, et al., docket no. 19-CV-
4  1101.

5  Parties, please state your appearances for the
6  record, beginning with the plaintiff.

7  MR. SPEREGEN: Good afternoon, Judge. For the
8  plaintiff, Adam Speregen, from the office of Gross Polowy,
9  900 Merchants Concourse, Westbury, New York 11590.

10  MR. TAPLER: Joseph Tapler, 49 Circuit Road,
11  Bellport, New York.

12  THE COURT: All right. Good afternoon.

13  Mr. Tapler, what, I guess, is your defense to the
14  foreclosure action? There was some mention in your letter
15  about problems with the underlying mortgage, I guess.

16  MR. TAPLER: Yes, sir.

17  At first I went through everything. I did some
18  research on how these -- first of all, if I may, I had two
19  other co-defendants on here and it's more of a question -- my
20  wife wasn't notified of anything. It was -- the ECF was sent
21  to me and it said it would not be sent electronically to her.
22  So is it okay that we proceed?

23  And I also have on the complaint Suffolk County
24  Traffic and Parking Violations Agency. Now how are they co-
25  defendants, the Suffolk County Traffic?

1       THE COURT: My guess is that there's some kind of a
2  lien on the house. Unpaid parking tickets maybe or something
3  like that?
4       MR. TAPLER: I can't remember the last time I got
5  one, but I don't know how they're on that list there of
6  defendants. And am I speaking on their behalf as well?
7       THE COURT: No, you're just representing yourself.
8       MR. TAPLER: Just myself. All right then.
9       Well, I went through sort of contract law and what
10 not. The original contract that we signed to purchase the
11 home was in December, 1994. And I started to look into how
12 these things actually operate, because it seemed like it sort
13 of sat dead.
14      In any contract with the bank there has to be
15 consideration, lawful consideration, mutual consideration
16 where asset was put up against asset.
17      Now when a bank makes a loan, it's basically a
18 promissory note in exchange for credits, which makes it like
19 a theoretical liability, whereas each party should put up
20 legit property.
21      And the bank -- other things I found, the bank
22 reserves are unchanged by the transaction. So the credits
23 constitute a new addition to their banking system by
24 bookkeeping entry and not actual value or wealth.
25      The money only exists once the banks create it to

1   create the loan.  And they don't have a right to do so.  They
2   don't have a right to create money.  That's no legal
3   obligation of theirs or a right of theirs.  This is what I
4   found.
5            So that's not lawful consideration. You need
6   process of making a loan against an asset, which is my home.
7            So all these years, paid it off, paid it off, paid
8   it off.  Of course, got nowhere.  And then the loan itself
9   was transferred to this bank and that --
10           THE COURT:  Let me just stop you there.
11           MR. TAPLER:  What I found is --
12           THE COURT:  Did you get the house?
13           MR. TAPLER:   I did.
14           THE COURT:  How did you get the house?
15           MR. TAPLER:  Somehow someone made a note to us --
16           THE COURT:  You got the house by getting a mortgage
17  from the bank, right?
18           MR. TAPLER:   Right.  Which we dutifully paid.
19           THE COURT:  That's your consideration.
20           MR. TAPLER:   Which we paid these many years.
21           THE COURT:  Okay.
22           MR. TAPLER:   Many years we paid.  And now this was
23  -- I actually found this -- and this is not me making this
24  up.  All those quotes I gave you were from *Modern Money*
25  *Mechanics*, and it was written by the Federal Reserve of

1  Chicago.  And they said that this --

2  THE COURT:  I don't think the Federal Reserve of
3  Chicago is making an argument that mortgage contracts are
4  invalid.

5  MR. TAPLER:  Well, this was cited.  They set
6  precedent in 1969.  *The Bank of Montgomery Minnesota v. Daly*
7  where the Judge, in fact, said that based on all of the
8  things I describe that the foreclosure action was, in fact,
9  denied.

10  THE COURT:  I'll have to look at that case, because
11  I don't think it says what you think it says.

12  MR. TAPLER:  Well, I'm sorry, sir.  With all due
13  respect I went through it.  It was pretty clear.

14  THE COURT:  Okay.

15  MR. TAPLER:  And then I get into the ideas of the
16  Federal Reserve and global currency revaluations. All those
17  other things that are going on.

18  So at this point I just wanted to make those
19  statements.  I don't think it was level playing field, if not
20  a raw deal.  Yes, we did get the house, but we then spent
21  many years beyond that paying a bank that never really put up
22  anything against the home except paper and their word.

23  THE COURT:  I don't understand that arch.  They put
24  up money.  That's how you were able to buy the house.  You
25  couldn't buy the house if they didn't give you the mortgage.

1  MR. TAPLER: Well, the way I read it it just seems
2  to be bookkeeping.
3  THE COURT: Frankly, it doesn't matter. You got
4  the house, didn't you? That's your consideration. You
5  received a benefit. There's an obvious, tangible benefit
6  that you received as part of that contract, a house. I don't
7  understand how that cannot be consideration.
8  MR. TAPLER: Well, if I received a house, that
9  would mean that I, in fact, own the house outright.
10  THE COURT: Well, you got to live in the house.
11  MR. TAPLER: Pardon?
12  THE COURT: You got to live in the house. Did you
13  pay rent?
14  MR. TAPLER: We paid the mortgage for many years.
15  THE COURT: Again, that's kind of the point. Lack
16  of consideration is a situation where somebody basically
17  gives a gift and there's nothing on the other side.
18  MR. TAPLER: Yes, there -- the bank put up actual
19  assets or was a transfer of columns in a bookkeeping page was
20  created.
21  THE COURT: Well, the only way that that would be
22  true is if the bank owned the house and sold you the house
23  and took out a mortgage on the house itself, maybe.
24  If the bank gave money to the seller of the house,
25  then they had to put up real money because the seller of the

1  house received real money, right? When you sell a house you
2  get money back.
3      MR. TAPLER: That is correct.
4      THE COURT: That money is coming from the bank that
5  is giving the mortgage to the buyer, unless the buyer is
6  paying all cash. That's the way it works.
7      When you all sit down at the closing table you're
8  reconciling that money. The money is going from the bank to
9  either pay off the original mortgage or whatever benefit goes
10 to the seller if they're, you know, getting more money from
11 the sale than what they owe on the house. That money goes to
12 them and that money's coming from the bank.
13     So the money doesn't go to you. It goes to the
14 seller of the house and that's how you're able to buy the
15 house. The bank is supplying you with the money that you
16 need to buy the house, unless you're paying all cash. That's
17 the consideration.
18     On your side you're agreeing to pay the mortgage on
19 a monthly basis and the bank is agreeing to give you the
20 money that you are using to purchase the home.
21     MR. TAPLER: I see. Well, that brings me down
22 another path.
23     The value of the money itself is not backed by any
24 -- it's the same idea as this. It's not really backed by an
25 asset of any kind.

1        The U.S. dollar is backed by the word of the
2 federal government saying that it is worth something
3 monetarily when, in fact, it's paper.  And if they need more
4 money, the federal reserve prints as much as they need to and
5 they just call it money.
6        It's a theoretical observation, but it's clear that
7 there is no real asset backing anything here.  The only asset
8 I have is my home.
9        And since the Federal Reserve Act of 1917 and then
10 consequently when they came off the gold standard of 1973 --
11 since 1973 the U.S. dollar isn't real -- isn't a real asset.
12        So if I bought my house in 1994 there was no
13 consideration on that side because the assets themselves were
14 not backed by any real tangible asset.
15        THE COURT:  If that were true, then there would
16 literally no economic based contracts.
17        MR. TAPLER:  That's true and then to a contract I
18 would say that the same problem exists across the board.
19        THE COURT:  And I would tell you without any
20 reservation that that is not true.  That the entire basis of
21 our legal system and contract law is not undermined by this
22 theory of the Federal Reserve not having any backing behind
23 the U.S. dollar.  That's just not the way it works.
24        MR. TAPLER:  Well, it's (indiscernible) points.
25 It's a currency based on -- again, it's a promissory note

1    basically.  It says we're telling you it's worth this.  And I
2    found -- and I've been at this for months.  That's the case,
3    from what I've found.
4         Now it may be a delusion or me just believing
5    everything I hear, which I don't, but that's my position.
6    And I just wanted to come in and share that.
7         THE COURT:  All right. I mean, you agreed when you
8    bought the house that you were going to pay the mortgage.
9    And the bank agreed that they would give you money that would
10   allow you to buy the house.
11        That's clearly a valid contract.  I don't know what
12   to say beyond that.  There's no question that it's a valid
13   contract.
14        MR. TAPLER:   Okay.  Thank you.
15        THE COURT:  You know, if there's something else
16   beyond that that would be a defense to the default, I'm happy
17   to hear it but I certainly don't believe that contract law in
18   this country is essentially unlawful, because that's
19   essentially what it would be, because very few contracts
20   don't involved the exchange of money in some way.  So that's
21   just not the way that consideration works.
22        That money has value because you can use it to go
23   purchase something. So whether it's backed by anything real
24   or not, if I hand you five dollars, you can go take that five
25   dollars and go downstairs to the coffee shop and buy yourself

1  a cup of coffee.
2      So the money has value.  It might be made out of
3  paper, but it has value because you can use it to purchase
4  things.
5      So anything else you want to add?
6      MR. TAPLER:  No.  Does the court need to hear from
7  the other co-defendants, because for some time now my wife
8  has not been made aware of anything and has not been included
9  in any of the discussions.
10     At the bottom of the ECF, the court filing, it says
11 it was sent to that person, this person, this person. And it
12 will not be sent to Judy Tapler.
13     THE COURT:  I'm pretty sure she is in default.  She
14 never responded to the initial complaint.
15     MR. TAPLER:  I'm not aware of that. I don't even
16 know when that was first filed.  Was that 2021?
17     THE COURT:  It would have been 2019.
18     MR. TAPLER:  Was there ever a default on it?
19     THE COURT:  There's been a default on the case for
20 a while.
21     MR. SPEREGEN:  It was an initial default on the
22 first motion that we brought in this action and then the
23 action was stayed until there was a decision in the court of
24 appeals.
25     THE COURT:  So I don't need to hear from anybody

1    else if they're in default.
2           MR. TAPLER:  All right.  Yes, sir.  I'm sorry.
3           THE COURT:  Anything else you want to add?
4           MR. TAPLER:  No, sir, but I appreciate you having
5    me in to share.
6           THE COURT:  I appreciate your diligence in looking
7    into the issue, but contract law is a little bit simpler than
8    -- I'm going to just issue a decision on the motion and we'll
9    go from there.  All right.
10          MR. TAPLER:  Thank you for your time, sir.
11          THE COURT:  Thank you.
12          MR. SPEREGEN:  Thank you, Judge.  Have a good
13   afternoon.
14          THE COURT:  You too.
15      (Proceedings concluded at 12:48 p.m.)
16          I, CHRISTINE FIORE, court-approved transcriber and
17   certified electronic reporter and transcriber, certify that
18   the foregoing is a correct transcript from the official
19   electronic sound recording of the proceedings in the above-
20   entitled matter.
21
22   *Christine Fiore* (signature)
23   _____        July 7, 2024
24   Christine Fiore, CERT
25