**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
U.S. BANK NATIONAL ASSOCIATION, NOT
IN ITS INDIVIDUAL CAPACITY BUT
SOLELY AS TRUSTEE FOR THE RMAC
TRUST, SERIES 2016-CTT,

                    Plaintiff,            **REPORT AND RECOMMENDATION**

         -against-                 **19-cv-1101-ENV-ST**

JOSEPH P. TAPLER, JUDY A. TAPLER,
CLERK OF THE SUFFOLK COUNTY
TRAFFIC & PARKING VIOLATIONS AGENCY

                    Defendants.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      U.S. Bank National Association, not in its individual capacity, but as Trustee of RMAC

Trust, Series 2016-CTT ("Plaintiff" or "U.S. Bank"), brings this mortgage foreclosure action under

New York Real Property Actions and Proceedings Law ("RPAPL") Article 13 against Joseph

Tapler ("Tapler"), Judy Tapler (collectively, the "Taplers"), and the Clerk of the Suffolk County

Traffic and Parking Violations Agency ("SCTPVA"). Plaintiff seeks to foreclose on a mortgage

encumbering the Taplers' property, located at 49 Circuit Road, Bellport, New York 11713 (the

"Property"). Now before this Court is Plaintiff's renewed Motion for Default Judgment (the

"Motion"). For the reasons discussed below, this Court respectfully recommends DENYING the

Motion and DISMISSING the action without prejudice for lack of subject matter jurisdiction.

## BACKGROUND

      This Court assumes the Parties' familiarity with the facts alleged.[1] To summarize, in 2009,

the Taplers obtained a $424,250.00 mortgage loan to purchase the Property. Compl. ¶¶ 1, 11, 12,

---

[1] Generally, on a motion for default judgment, the Court deems as true the Complaint's well-pleaded allegations, except those concerning damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6, 84 (2d Cir. 2009). However, this

ECF No. 1. In connection with the loan, the Taplers executed and delivered a note, agreeing to pay the mortgage lender the principal loan amount plus interest. *Id.* ¶ 11. Although Plaintiff was not the lender when the Taplers originally obtained the mortgage, a previous holder of the mortgage assigned it to Plaintiff—not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT—on September 28, 2017. *Id.* ¶ 18.

According to Plaintiff, on November 1, 2015, the Taplers failed to pay the amount due on their mortgage loan and, thereafter, stopped making subsequent payments. *Id.* ¶ 19. As of the Complaint's filing on February 25, 2019, the Taplers allegedly owed $392,010.50 towards the loan's principal balance, with interest accruing from October 1, 2015, at a 3.875% rate. *Id.* ¶ 20. Plaintiff commenced the instant action against the Taplers demanding, among other things, foreclosure of the mortgage and sale of the Property.[2] *See id.* ¶¶ a.–j.

Initially, Defendants failed to answer the Complaint or otherwise appear in the action. Plaintiff obtained an entry of default from the Clerk of Court against Defendants on April 15, 2019, and then moved for default judgment. *See* Entry Default, ECF No. 12; Mot. Default Judgment, ECF No. 16. This Court recommended denial of that motion, and further recommended staying the filing of any other dispositive motions, pending the resolution of questions certified to the New York Court of Appeals in *CIT Bank N.A. v. Schiffman*, 948 F.3d 529 (2d Cir.), *certified question accepted*, 34 N.Y.3d 1137 (2020). *See* R. & R., ECF No. 20. On October 27, 2020, the District Court adopted this Court's Report & Recommendation, and ordered the case administratively

---

principle "is inapplicable when a court doubts the existence of subject matter jurisdiction." *U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Trust v. Monroe*, 15-CV-1480 (LEK/DJS), 2017 WL 923326, at *2 (N.D.N.Y. Mar. 8, 2017); *see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted . . . This principle, however, has no bearing on an inquiry into whether the default judgment itself is void for lack of subject matter jurisdiction.").

[2] Plaintiff also sued the Clerk of the SCTPVA, alleging that the Clerk held a lien on the Property subordinate to Plaintiff's mortgage. *Id.* ¶ 6.

closed until the New York Court of Appeals decided the certified question in *CIT Bank N.A. v. Schiffman*. *See* Order Adopting R. & R., ECF No. 22. On August 16, 2021, Plaintiff moved to reopen the case, which the Court granted.[3] *See* Docket Order, dated September 8, 2021. The Court also allowed Plaintiff to renew its motion for default judgment, and referred any such renewed motion to this Court. *See id.*

Shortly thereafter, Tapler appeared in the action, notifying the Court that he had been unaware of the degree to which his mortgage was in default, or that Plaintiff had initiated litigation as a result. *See* Letter, ECF No. 29. Plaintiff and Tapler (who has been proceeding *pro se*) then tried to negotiate a possible settlement / loan modification. *See generally* ECF Nos. 32–50. The negotiations were unsuccessful, and Plaintiff, once again, renewed its motion for default judgment (*i.e.* the instant Motion).[4] *See* Minute Entry, ECF No. 51; Mot. Default Judgment, ECF No. 25. However, before this Court can issue a default judgment, "it must 'determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'"[5] *Wilmington Sav. Fund Soc'y, FSB not individually but as Tr. for Pretium Mortg. Acquisition Tr. v. Okunola*, 18-CV-2084 (AMD), 2023 WL 9507759, at *1 (E.D.N.Y. Mar. 15, 2023) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

## LEGAL STANDARD

"Federal courts are not courts of general jurisdiction." *Cangemi v. United States*, 13 F.4th 115, 135 (2d Cir. 2021) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

---

[3] According to Plaintiff, "in *CIT Bank N.A. v. Schiffman*, 36 N.Y. 3d 550 (N.Y. 2021), *and CIT Bank N.A. v. Schiffman*, 999 F. 3d 113 (2d Cir. 2021), the Court of Appeals and United States Court of Appeals for the Second Circuit, respectively, issued rulings that support the Plaintiff's position, proofs, and requested relief in this action." Mot. Reopen Case, ECF No. 23.

[4] On January 9, 2024, this Court held a hearing on the Motion. *See* Minute Entry, ECF No. 55. In lieu of a memorandum of law, Tapler's oral argument at the hearing serves as his opposition to the Motion. *See* Tr., ECF No. 56.

[5] Defendants have not contested subject matter jurisdiction.

Rather, they have limited jurisdiction, "and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019) (citing *Durant, Nichols, Houston, Hodgson & Cotese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)). "Perhaps the most important limit is subject-matter jurisdiction, which defines a court's competence to adjudicate a particular category of cases." *Id.* at 617 (citations and quotation marks omitted); *see Pan v. Whitaker*, 351 F.Supp.3d 246, 249 (E.D.N.Y. 2019) ("Regardless of how counterintuitive it might seem, federal courts, unlike their state brethren, are courts of limited subject matter jurisdiction.").

Subject matter jurisdiction can neither be waived nor forfeited because it concerns the court's power. *Arbaugh*, 546 U.S. at 514 (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Therefore, even absent a challenge from the parties, the court must satisfy itself that subject matter jurisdiction exists. *Id.*; *see Pan*, 351 F. Supp.3d at 249–50 ("federal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction"). Moreover, the court must determine whether subject matter exists before proceeding to the case's merits. *Platinum-Montaur Life Scis.*, 943 F.3d at 615, 618, 619. If the court determines at any time that it lacks subject matter jurisdiction over a case, the court must dismiss the case. Fed. R. Civ. P. 12(h)(3); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *Pan*, 351 F. Supp.3d at 250.

Federal district courts have diversity jurisdiction, meaning jurisdiction over any civil action between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Diversity jurisdiction exists "only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016) (citing *Wis. Dep't of Corr. v. Schacht*,

524 U.S. 381, 388 (1998)).  As the plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence, *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016), a plaintiff asserting diversity jurisdiction must show that diversity of citizenship is "distinctly and positively averred in the pleadings, or . . . appear[s] with equal distinctness in other parts of the record."  *Leveraged Leasing Admin. Corp. v. PacificCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (citations and quotation marks omitted).  "The presence of the nondiverse party automatically destroys original jurisdiction: No party need assert the defect."  *Schacht*, 524 U.S. at 389.  "No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own."  *Id.*

## DISCUSSION

As Plaintiff "seeks foreclosure under New York law, [it] must establish diversity jurisdiction to proceed in this Court."  *Okunola*, 2023 WL 9507759, at *2.  Plaintiff claims diversity jurisdiction here, asserting that complete diversity exists among the Parties, and that the amount in controversy exceeds $75,000.  Compl. ¶ 9.  Plaintiff specifically alleges: (1) that it is a national banking association with its main office, as set forth in its articles of association, in Ohio; (2) that the Taplers are New York citizens; and (3) that the SCTPVA exists under the laws of New York with its principal place of business in New York.[6]  *Id.* ¶¶ 2, 4–6.

However, the diversity jurisdiction analysis does not end there.  While true that a national banking association, like U.S. Bank, is a citizen "in the State designated in its articles of association as its main office," *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006), U.S. Bank is not suing in its individual capacity.  Rather, U.S. Bank is suing *solely as Trustee* of RMAC Trust, Series 2016-CTT (the "Trust").  Therefore, this Court must determine whether U.S. Bank's citizenship—

---

[6] Plaintiff alleges that the Taplers owe at least $392,010.50 on the mortgage.  Compl. ¶ 20.  Plaintiff therefore meets the amount in controversy requirement.  *See* 28 U.S.C. § 1332.

rather than that of the Trust's beneficiaries—controls for diversity jurisdiction purposes. *See Okunola*, 2023 WL 9507759, at *2 ("the threshold issue is which citizenship controls: the citizenship of the trustee or of the trust's beneficiaries.").

"[W]hen a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382–83 (2016) (emphasis in original). However, for the trustee's jurisdictional citizenship to control, the trustee must be the "real party" in interest to the controversy. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980); *see id.* at 461 ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *U.S. Bank Tr., N.A., as Tr. for LSF8 Master Participation Tr. v. Dupre*, 15-CV-0558 (LEK/TWD), 2016 WL 5107123, at *4 (N.D.N.Y. Sept. 20, 2016) (noting that a trustee's citizenship only applies when the trustee is the real party in interest); *see also Okunola*, 2023 WL 9507759, at *3 (noting cases where courts did not automatically conclude that there was diversity jurisdiction just because the trustee sued in its own name); *Wells Fargo Bank, N.A., not in its individual capacity but solely as Tr. for RMAC Remic Tr., Series 2009-9 v. Ullah*, No. 13 Civ. 0485 (JPO), 2014 WL 470883, at *3 (S.D.N.Y. Feb. 6, 2014) ("the Court must disregard the citizenship of parties who are added solely to manufacture or destroy complete diversity").

The trustee is only the real party in interest if the trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*, 446 U.S. at 464. Put differently, the trustee must be "active" "whose control over the assets . . . is real and substantial." *Id.* at 465 (noting that the trustees were not "'naked trustees' who act[ed] as 'mere conduits' for a remedy flowing to others." (citing *McNutt v. Bland*, 2 How. 9, 13–14 (1844))). If a trustee is, by contrast, a mere "naked" trustee, "the trust's beneficiaries are the real parties to the

controversy, and their citizenship will control for diversity purposes." *Ullah*, 2014 WL 470883, at *3; *U.S. Bank Nat'l Ass'n not in its individual capacity but solely as Tr. for the RMAC Tr., Series 2016-CTT v. Desrosiers*, 17-CV-7338 (JMW), 2021 WL 5630899, at *3 (E.D.N.Y. Dec. 1, 2021) ("When a plaintiff fails to show that a trustee's control over the trust assets is real and substantial . . . the citizenship of the trust's beneficiaries—rather than the citizenship of the trustee—controls the court's diversity analysis." (citing *Dupre*, 2016 WL 5107123, at *4)).

In 1980, the U.S. Supreme Court held in *Navarro* that trustees of a business trust were the "real part[ies] to the controversy for purposes of diversity jurisdiction." 446 U.S. at 464, 65. To make such a determination, the Court analyzed the trust's governing instrument, which permitted the trustees to "take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Id.* at 464. The trust's beneficiaries, by contrast, "had no voice in the initial investment decision . . . [and could] neither control the disposition of this action nor intervene in the affairs of the trust except in the most extraordinary situations." *Id.* at 464–65. The Court therefore concluded that the trustees were the real and substantial parties in interest to the controversy. *Id.* at 465.

Decades later, *Navarro*'s upshot remains that to determine whether a trustee is the real party in interest, courts analyze the scope of the trustee's authority as set forth in the trust's governing instrument(s). *See, e.g.*, *Okunola*, 2023 WL 9507759, at *3; *Desrosiers*, 2021 WL 5630899, at *3 ("courts look to the terms of the trust agreement to discern the scope of the trustee's power."). Yet, in some cases, trustee-plaintiffs fail to provide the Court with such governing instruments. *See, e.g.*, *Wilmington Sav. Fund Soc'y, SFB as Tr. of Aspen Holdings Tr. v. Fernandez*, 712 F.Supp.3d 324, 331 (E.D.N.Y. 2024) ("Because Wilmington failed to attach the trust agreement, the Court cannot determine the identity of the real party in interest and thus whether Wilmington's

citizenship or Aspen's citizenship matters for diversity purposes."). Courts "uniformly" dismiss those cases for lack of subject matter jurisdiction. *Okunola*, 2023 WL 9507759, at *3; *see, e.g.*, *id.* at *4 ("Because the plaintiff does not provide a trust agreement or any other document capable of establishing its authority over the trust, the case is dismissed for lack of subject matter jurisdiction.").

Plaintiff's counsel, Gross Polowy, knows this all too well, as they have previously failed, in other mortgage foreclosure actions, to sufficiently allege, or submit documentation in support of, their trustee-plaintiff clients' assertion of diversity jurisdiction. *See, e.g.*, *id.* at *2; *U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Gross*, 255 F.Supp.3d 427, 430 (W.D.N.Y. 2017) ("It bears mentioning that Plaintiff's attorney, Gross Polowy, LLC, has been frequently cited for failing to follow the requirements attendant to securing default judgments in other foreclosure cases . . . ."); *Monroe*, 2017 WL 923326, at *1; *Dupre*, 2016 WL 5107123, at *4; *see also U.S. Bank Nat'l Ass'n not in its individual capacity but solely as Tr. for the RMAC Tr., Series 2016-CTT v. Desrosiers*, 17-CV-7338 (AKT) 2021 WL 2662042, at *4 (E.D.N.Y. Mar. 31, 2021) ("The Court has found numerous decisions by other district courts within the Second Circuit which address the issue of diversity jurisdiction and whether it has been properly pled or established by U.S. Bank, through its counsel at Gross Polowy LLC."); *U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Licata*, 17-cv-6037(MAT), 2017 WL 2671421, at *2 (W.D.N.Y. June 21, 2017) (noting that Gross Polowy has "been warned that it is improper to pursue an action in federal court without properly asserting subject matter jurisdiction . . . It nevertheless filed the instant motion for default judgment without making any attempt to remedy the deficiencies in its pleading."). Those actions were dismissed for lack of subject of matter jurisdiction. *See, e.g.*, *Okunola*, 2023 WL 9507759, at *3 (dismissing suit for lack of subject matter jurisdiction where plaintiff had "not submitted a

trust agreement or any other document that conveys its authority over the trust's assets and its relationship to the beneficiaries of the trust."); *Gross*, 255 F.Supp.3d at 430 (dismissing for lack of subject matter jurisdiction where plaintiff-trustee merely asserted its principal place of business, rather than submitting its articles of incorporation or referencing location of its main office); *Monroe*, 2017 WL 923326, at *5 (dismissing for lack of subject matter jurisdiction where plaintiff-trustee failed to allege, among other things, "its degree of control of trust assets, or, alternatively, the citizenships of the trust's beneficiaries"); *Dupre*, 2016 WL 5107123, at *3, 4.

For example, in *Dupre*, plaintiff U.S. Bank Trust, N.A. ("U.S. Bank Trust"), represented by Gross Polowy, brought a mortgage foreclosure action in its capacity as trustee of the LSF8 Master Participation Trust. *Id.* at *1. There, the Court noted that U.S. Bank Trust had "failed to show that its citizenship alone may be counted when bringing suit on behalf of the LSF8 Master Participation Trust," and that "[w]hile the Court asked U.S. Bank [Trust] to provide evidence on this point (namely, the trust instrument), it ha[d] utterly failed to do so." *Id.* at *3, *4. In fact, U.S. Bank Trust had only provided a *redacted* trust agreement, with the only visible provision rejecting the very idea that plaintiff was "an active trustee with real and substantial control over the trust's assets." *Id.* at *4. Accordingly, the Court dismissed U.S. Bank Trust's suit for lack of subject matter jurisdiction. *Id.*

In *Monroe*, the Court even went so far as to "strongly caution[] U.S. Bank [Trust] (and its attorneys, Gross Polowy) against continuing to claim federal jurisdiction in this or other lawsuits if it either lacks an arguable basis for doing so or does not wish to invest the effort required to make its case." 2017 WL 923326, at *5. In *Okunola* (and other instances), Plaintiff's counsel did not heed this warning, and failed to submit "a trust agreement or any other document that conveys its authority over the trust's assets and its relationship to the beneficiaries of the trust." 2023 WL

9507759, at *3.  Not only did the Court in *Okunola* restate the Court's warning in *Monroe*, but it also noted that Plaintiff's counsel, "appears to have brought 'numerous' cases in this Circuit on behalf of trustees seeking to foreclose mortgages, without submitting documents that would establish subject-matter jurisdiction."  *Id.* at *4 n.2.  In *Gross*—another action in which Gross Polowy failed to sufficiently allege subject matter jurisdiction on behalf of its trustee-client—the Court also reiterated *Monroe*'s warning.  255 F.Supp.3d at 430.  There, the Court even observed that "Gross Polowy's routine errors appear to demonstrate a pattern of indifference toward the substance of their filings."  *Id.*

In the instant action, however, Plaintiff has submitted the trust's governing instrument(s), namely, the Trust Agreement, and a Limited Power of Attorney ("POA").  *See* Vargas Decl. at Exs. I, K, ECF Nos. 27-9, 27-11 (cited hereinafter as POA and Trust Agreement, respectively).  Plaintiff argues that, per the Trust Agreement and POA, Plaintiff controls the Trust—such that it is the real party in interest to this controversy—and that its Ohio citizenship accordingly controls for jurisdictional purposes.  *See* Pl.'s Mem. Supp. at 10–13, ECF No. 26.  For the reasons discussed below, this Court disagrees.

## I.  THE TRUST AGREEMENT AND POWER OF ATTORNEY FAIL TO ESTABLISH U.S. BANK AS THE REAL PARTY IN INTEREST.

The Trust Agreement, dated December 18, 2015, is between U.S. Bank, as Trustee[7] of the Trust, and Roosevelt Management Company LLC ("Roosevelt") as Program Administrator and Trust Beneficiary.  *See* Trust Agreement at 1.  Although the Trust Agreement defines the scope of U.S. Bank's authority as Trustee, Plaintiff's argument primarily focuses, instead, on the POA.

---

[7] The Trust Agreement also designates U.S. Bank as the "Participation Agent" under the Participation Agreement, which is a master participation agreement dated December 18, 2015.  Trust Agreement at 1.  Plaintiff makes no jurisdiction-related arguments in its Memorandum of Law concerning the Participation Agreement.  As such, this Court does not analyze the Participation Agreement.

Under the POA, dated October 3, 2019, U.S. Bank appointed Rushmore Loan Management Services LLC ("Rushmore") to perform various tasks to service mortgage loans held by U.S. Bank.[8]  *See* POA.

Plaintiff's emphasis on the POA, however, is misplaced.  Before determining what authority—if any—the POA grants U.S. Bank to control the trust, this Court must first determine what authority the Trust Agreement grants U.S. Bank.  In other words, Plaintiff "puts the cart before the horse in focusing first on the POA, as any power that Plaintiff has as Trustee is innately derived from the Trust Agreement." *Desrosiers*, 2021 WL 5630899, at *4.  "The proper analysis therefore begins by examining the scope of Plaintiff's authority as delineated by the Trust Agreement." *Id.*  Accordingly, this Court will first analyze the Trust Agreement's relevant provisions, and then turn to the POA.[9]

## A.  The Trust Agreement

Upon review of the Trust Agreement, this Court concludes that the Trust Agreement does not confer sufficient authority upon Plaintiff, as Trustee, for it to be the real party in interest to the instant action.  *See generally id.*  If anything, the Trust Agreement reveals that Plaintiff's role as Trustee is limited, and, importantly, subject to the Trust Beneficiary's direction.  *See id.* at *4.

For example, Trust Agreement Section 5.01, sets forth Plaintiff's limited duties as Trustee. Section 5.01, titled "Duties of Trustee," provides, in-part:

> The Trustee undertakes to perform such duties **and *only* such duties as are specifically set forth in this Agreement or as may be directed by** the Participation Agent **or the Program Administrator** in accordance with Section 5.02 hereof and shall not be liable except for the performance of such duties and

---

[8] The POA lists the Trust as one of 26 trusts for which U.S. Bank serves as Trustee.  *See* POA at Schedule A.

[9] Where the Court's jurisdiction is in dispute, "the court has the power and obligation" to refer to evidence outside the pleadings, such as affidavits.  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).  This Court can thus analyze the Trust Agreement and POA here, as Plaintiff's counsel attached them to his Declaration in Support of the Motion.  *See* Vargas Decl. at Exs. I, K, ECF Nos. 27-9, 27-11.

obligations as are specifically set forth in this Agreement and no implied covenants, duties or obligations shall be read into this Agreement against the Trustee[.]

Trust Agreement § 5.01(a)(i) (emphasis added). This provision is like the one in the trust agreement before the Court in *Dupre*, which provided that the trustee "shall have only such rights, powers and duties as are specifically and expressly required by this Agreement." 2016 WL 5107123 at *4. As in *Dupre*, Section 5.01(a)(i) here "seems to expressly reject the idea that [U.S. Bank] is an active trustee with real and substantial control over the trust's assets (and thus that [U.S. Bank] is the real party in interest under *Navarro*)." *Id.* Section 5.01(a)(i) further reveals that the Program Administrator, *i.e.* Roosevelt, who is *also* the Trust Beneficiary, has the power to direct the Trustee—and not the other way around. *See Wilmington Sav. Fund Soc'y, FSB as Tr. of Apspen Holdings Tr. v. Bernash*, 23-CV-485 (AMN/DJS), 2024 WL 4837982, at *3 (N.D.N.Y. Nov. 20, 2024) (noting that "various disclaimers applicable to [the trustee]" in the trust agreement support the finding that the trustee is not the real party in interest).

Trust Agreement Section 5.02 further "underscores the limitation on Plaintiff's authority." *Desrosiers*, 2021 WL 5630899 at *4. Section 5.02, titled "Action Upon Instruction," provides, in part:

The Participation Agent **at the direction of** the Participants pursuant to the Participation Agreement (**and the Program Administrator** on behalf of the Participation Agent) **shall have the power to direct the Trustee** by written instrument **in matters relating to the Trust Fund**, except to the extent inconsistent with the provisions of this Agreement, any Basic Document or applicable law, including, by way of illustration and **not of limitation, in connection with the execution of documents necessary or appropriate to the acquisition, disposition or protection of property constituting the Trust Fund, enforcement of the rights and protection of the interests of the Participation Agent on behalf of the Participants, and amendment of this Agreement**.

Trust Agreement § 5.02(a) (emphasis added). This provision, too, shows that the Program Administrator, *i.e.* the Trust Beneficiary, can direct the Participation Agent, *i.e.* U.S. Bank,

regarding the Trust fund and the Trust's affairs. *See Bernash*, 2024 WL 4837982, at \*3 (noting that where the trust, rather than the trustee, has authority concerning trust assets, the trustee is not the party in interest). Indeed, this is not the scenario that the Supreme Court contemplated in *Navarro*, in which the trust beneficiary could not "intervene in the affairs of the trust except in the most extraordinary situations." *See* 446 U.S. at 465.

Despite the Trust Agreement's explicit limitations on the Trustee's authority, U.S. Bank claims that other provisions of the Trust Agreement show that U.S. Bank has sufficient control over the Trust to be the real and substantial party in interest. Pl.'s Mem. Supp. at 11–12. For example, U.S. Bank notes that Trust Agreement Section 8.01 grants the Trustee the right to retain possession of each Mortgage File. *Id.* at 11. Section 8.01 reads:

> Until all amounts distributable in respect of the Trust Fund have been distributed in full, the Trustee shall cause the Custodian on behalf of each of the Trustee, the Participation Agent and the Participants to retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions of this Agreement, the Participation Agreement and the Custodial Agreement.

Trust Agreement § 8.01. However, Plaintiff does not explain how, if at all, this provision concerning mortgage files, diminishes the Trust Beneficiary's authority to direct the Trustee under Sections 5.01 and 5.02. *See Desrosiers*, 2021 WL 5630899, at \*5 ("Plaintiff's postulations ignore that the beneficiary is empowered to direct Plaintiff in these matters, undercutting Plaintiff's argument.").

Similarly, Plaintiff seems to suggest, without much explanation, that Trust Agreement Section 7.01(a) shows that U.S. Bank is the real party in interest. *See* Pl.'s Mem. Supp. at 12. As Plaintiff notes, Section 7.01(a) provides, in part, that "the Beneficiary . . . shall not have any right to vote or in any manner otherwise control the operation and management of the Trust Fund."

Trust Agreement § 7.01(a). However, Plaintiff omits critical language from the provision, which actually provides, in part:

> **Except as otherwise expressly provided herein**, the Beneficiary, solely by virtue of its status as the Beneficiary, shall not have any right to vote or in any manner otherwise control the operation and management of the Trust Fund[.]

*Id.* (emphasis added). Given this disclaimer, Section 7.01(a), too, does not diminish the Trust Beneficiary's authority under Sections 5.01 and 5.02.

Plaintiff also cherry picks language from Section 7.01(b), claiming that, under Section 7.01(b), the Trust Beneficiary "shall not have any right, by virtue of or by availing itself of any provisions of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement." *See* Pl.'s Mem. Supp. at 12. However, Section 7.01(b) more fully provides:

> The Beneficiary, solely by virtue of its status as Beneficiary, shall not have any right, by virtue of or by availing itself of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, ***unless also*** the Beneficiary shall have made written request upon the Trustee to institute such action, suit or proceeding in ***its own name as Trustee*** hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the cost, expenses and liabilities to be incurred therein or thereby and the Trustee, for thirty days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding and no direction inconsistent with such written request has been given such Trustee during such thirty-day period by the Beneficiary[.]

Trust Agreement § 7.01(b) (emphasis added). Contrary to Plaintiff's insinuation, Section 7.01(b) does not absolutely bar the Trust Beneficiary from instituting a suit, action, or proceeding. Rather, Section 7.01(b) provides that the Trust Beneficiary may not institute a suit unless it has first asked the Trustee to bring a suit in its own name, but the Trustee has refused or failed to do so. If anything, "[t]he latter portion of the provision clearly evidences the beneficiary's ability to direct the Plaintiff into litigation of its choosing." *Desrosiers*, 2021 WL 5630899, at *5.

Finally, Plaintiff argues that the Trust Agreement in this case is like the one before the Court in *U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Tr. v. Adhami*, where the Court held that U.S. Bank Trust, as trustee for the LSF9 Master Participation Trust, was the real party in interest to the action. 18-CV-530 (PKC) (AKT), 2019 WL 486086, at *3 n.4 (E.D.N.Y. Feb. 6, 2019). In *Adhami*, the trust agreement gave the trustee-plaintiff the broad power "to assign, grant, transfer, pledge, mortgage and/or convey Mortgage Loans and [Real Estate Owned] Properties and other assets to any party" and "to hold, manage and distribute its property and assets and any proceeds . . . (including but not limited to commencing any enforcement proceedings or actions and taking any such further action incidental thereto)." *Id.* (alterations in original). Such is not the case here. Despite Plaintiff's assertion that the Trust Agreement is "substantially identical to the documents produced in *Adhami*," Plaintiff cites to no provision in the Trust Agreement comparable to the one cited in *Adhami*.[10]

Without more, this Court cannot conclude that the Trust Agreement grants Plaintiff the kind of control that the Supreme Court contemplated in *Navarro* that would render Plaintiff the real and substantial party in interest to this controversy. However, this Court will next turn to the other document that Plaintiff submitted to support its position—the POA.

## B.      The Power of Attorney

Upon review of the POA, this Court concludes that the POA also fails to grant Plaintiff, as Trustee, sufficient authority for it to be the real party in interest to this action. Under the POA, Plaintiff appointed to Rushmore to service the Trust's loans (as well as those of 25 other trusts). Yet, no matter how much authority Plaintiff purports to give Rushmore under the POA, any power

---

[10] Plaintiff specifically argues that the Trust Agreement and POA are "substantially identical to the documents produced in *Adhami*." *See* Pl.'s Mem. Supp. at 10. For reasons discussed *infra* Section I. B., Plaintiff's reliance on the POA—which Plaintiff has not, in any event, shown to be "substantially identical" to the documents produced in *Adhami*—is misplaced.

that Plaintiff has as Trustee of the Trust derives first, and solely, from the Trust Agreement. *See Desrosiers*, 2021 WL 5630899, at *4. As such, the POA does not save Plaintiff.

Plaintiff asserts that under the POA, it appointed Rushmore to:

"[d]emand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including…the preparation and issuance of statements of breach, notices of default, and/or notices of sale…foreclosing on properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver…in any bankruptcy action, state or federal suit or any other action";

"[e]xecute and/or file such documents and take such other action as is proper and necessary to defendant the Trustee in litigation and to resolve any litigation where [Rushmore] has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission or settlement";

"[t]ransact business of any kind regarding the Loans…to contract for, purchase, receive, and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto"; and

conduct virtually any and all acts necessary, including but not limited to, executing mortgage loan documents and statements . . . endorsing checks and negotiable instruments . . . executing insurance policy documents and making hazard or other insurance claims . . . transferring assets of the Trust . . . subordinating a Trust asset such as a mortgage for the purpose of refinancing a loan or granting an easement to a public utility company or government agency . . . closing title to a property . . . and executing and delivering documentation with respect to the maintenance and renovation of properties.

Pl.'s Mem. Supp. at 10–11 (citing POA).

Indeed, Plaintiff's description of the POA shows that Plaintiff appointed Rushmore—a non-party to the Trust Agreement—to service loans held by various trusts. However, the POA does not determine whether Plaintiff had the authority to perform the duties that it purports to delegate under the POA in the first place, and Plaintiff cannot reverse engineer the POA to make it so. This is especially true, considering that the POA does not reference the Trust Agreement,

and post-dates the Trust Agreement.  *See generally* POA.  Moreover, Plaintiff does not argue that

the POA is part of the Trust Agreement or an amendment thereto.[11]  Ultimately, although U.S.

Bank "spills plenty of ink pointing to provisions in the POA, the fact remains that the beneficiary

maintains vast authority to direct Plaintiff to act under the terms of the Trust Agreement."

*Desrosiers*, 2021 WL 5630899, at *5.  As such, the POA does not establish Plaintiff as the real

party in interest.

### C. Another Court in This District has Already Determined That the Trust Agreement and Power of Attorney do not Establish Plaintiff as the Real Party in Interest.

Notably, another court in this District has already held that the same Trust Agreement and

POA do not establish U.S. Bank as the real party in interest to a mortgage foreclosure action.  In

*Desrosiers*—an action practically identical to this one—U.S. Bank, also in its capacity as Trustee

for the RMAC Trust, Series 2016-CTT, sued under New York RPAPL Article 13 to foreclose on a

mortgage encumbering a property owned by the defendant.  *See* Docket No. 17-CV-7338, Compl.,

ECF No. 1.  Then-Magistrate Judge Gary Brown dismissed the complaint, holding that Plaintiff

had failed to adequately allege diversity jurisdiction.[12]  *See* Docket No. 17-CV-7338, Docket

Order, dated September 9, 2019.  In dismissing the complaint, Judge Brown stated:

> . . . the Court independently determined that the Complaint is silent on the issue of
> the citizenship of the RMAC Trust and/or its shareholders. To establish diversity
> jurisdiction, plaintiff is required to allege such information. *Americold Realty Tr. v.
> Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016, 194 L. Ed. 2d 71
> (2016)("[S]hareholders [of a real estate trust] appear to be in the same position as
> the shareholders of a joint-stock company or the partners of a limited partnership....
> for purposes of diversity jurisdiction, members [of a real estate trust] include its
> shareholders"). A complaint is deficient where it has no allegation as to the identity
> or citizenship of [an LLCs] members." *Carter v. Healthport Tech., LLC*, 822 F.3d

---

[11] Indeed, the Trust Agreement contains a merger and integration clause, and requires the written consent of the Trust Beneficiary to be amended.  *See* Trust Agreement, §§ 10.02, 10.03.

[12] In *Desrosiers*, Plaintiff initially claimed diversity jurisdiction based on its principal place of business in Delaware. *See* Docket No. 17-CV-7338, Compl. ¶ 2.  In the instant action, however, Plaintiff asserted its Ohio citizenship, per the rule in *Wachovia Bank* that national banking associations are citizens of the state, as set forth in their articles of association, in which their main office sits.  *See* 546 U.S. at 318.

47, 60 (2d Cir. 2016) . . . Based upon this failure to adequately allege diversity jurisdiction, the Complaint is DISMISSED WITHOUT PREJUDICE.

*Id.*

U.S. Bank thus amended its complaint, and the case was reassigned to Magistrate Judge Kathleen Tomlinson. *See* Docket No. 17-CV-7338, Am. Compl., ECF No. 26; Docket No. 17-CV-7338, Docket Entry, dated January 17, 2020. Eventually, the parties moved for summary judgment. *See* Docket No. 17-CV-7338, Pl.'s Mot. Summ. Judgment, ECF No. 36; Docket No. 17-CV-7338, Def.'s Cross Mot. Summ. Judgment, ECF No. 43. Although U.S. Bank submitted the Trust Agreement to support its summary judgment motion, Judge Tomlinson found, in a decision dated March 31, 2021, that U.S. Bank had failed to point to any provision in the Trust Agreement supporting U.S. Bank's claim that it was "empowered to hold, manage, and dispose of assets of the RMAC Trust, Series 2016-CTT, prosecute legal actions on behalf of the RMAC Trust, Series 2016-CTT, has title to and manages the assets of the RMAC Trust, Series 2016-CTT, and controls this litigation on behalf of the RMAC Trust, Series 2016-CTT." *Desrosiers*, 2021 WL 2662042, at *5. Judge Tomlinson also found, as this Court finds here, that Section 5.01 limited U.S. Bank's trustee duties and appeared "virtually identical to the provision analyzed by the court in *Dupre*, which was found not to have conferred sufficient powers upon U.S. Bank to deem it the real party in interest under *Navarro*." *Id.* Without more from U.S. Bank to establish that it was the real party in interest, the Court in *Desrosiers* could not determine whether there was diversity jurisdiction. *See id.*

In deciding to afford Plaintiff "**<u>one final opportunity</u>** to demonstrate that diversity jurisdiction exists," Judge Tomlinson temporarily denied the parties' motions, and ordered the parties to submit supplemental briefing on subject matter jurisdiction. *Id.* (emphasis in original). Judge Tomlinson required the supplemental briefing "to draw the Court's attention to specific

documentation, *i.e.*, the Trust Agreement or something else, which demonstrates (a) that Plaintiff's control over the trust assets is real and substantial to warrant the application of Plaintiff's main office as the basis for citizenship; or (b) the citizenship of the beneficiaries of the Trust." *Id.* The parties accordingly submitted supplemental briefing. *See* Docket No. 17-CV-7338, Mem. Opp'n, ECF No. 51; Docket No. 17-CV-7338, Mem. Opp'n, ECF No. 52.

The case was then reassigned to Magistrate Judge James Wicks. On December 1, 2021, Judge Wicks—having reviewed the supplemental briefing that Judge Tomlinson ordered—denied U.S. Bank's summary judgment motion, holding that U.S. Bank had failed, once again, to establish subject matter jurisdiction. *Desrosiers*, 2021 WL 5630899, at *1. U.S. Bank argued there, as here, that the POA and Trust Agreement established Plaintiff's authority over the Trust assets to make it the real party in interest. *Id.* at *3.

In addressing U.S. Bank's argument, Judge Wicks analyzed the same provisions of the Trust Agreement and POA that are presently before this Court, concluding that those provisions "ma[de] clear that Plaintiff does not wield sufficient authority to be deemed the real party in interest." *Id.* at *4. Judge Wicks first found that Trust Agreement Section 5.01 only granted Plaintiff limited authority over the trust assets, and instead granted the Trust Beneficiary the ability to direct the Trustee. *Id.* Judge Wicks also found that Section 5.02 "underscore[d] the limitation on Plaintiff's authority," as it too showed that the Trust Beneficiary had the ability to direct the Trustee with respect to the Trust. *Id.* at *4. As Judge Wicks put it, "The Trust Agreement therefore gives the beneficiary legitimate authority over the Trust assets rather than the mere ability to advise Plaintiff on Trust affairs . . . This is exactly the type of authority that makes the beneficiary—rather than Plaintiff—the real party of interest." *Id*. As such, Judge Wicks concluded that Plaintiff "failed to meet its burden in establishing that it is the real party in interest" to the controversy. *Id.*

at *5.  Given Plaintiff's failure to allege the Trust Beneficiary's citizenship, Judge Wicks further

concluded that the Court did not have subject matter jurisdiction over the suit.  *Id*.  So too here.

*See supra* Sections I. A., I. B.

Despite that Plaintiff bears the burden to show that subject matter jurisdiction exists,

Plaintiff never brought *Desrosiers* to this Court's attention.  *See Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000) ("plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists"); *Pan*, 351 F. Supp.3d at 248–49 ("The

burden of establishing federal subject matter jurisdiction rests on the shoulders of the party

invoking jurisdiction.").  While true that Judge Wicks issued his decision in *Desrosiers* after

Plaintiff filed its Motion in this case, Plaintiff still could have presented the *Desrosiers* decision to

this Court and explained how, if it at all, this case is distinguishable.  *See Delgado v. Ocwen Loan*

*Servicing, LLC*, 13-CV-4427 (NGG), 2016 WL 4617159, at *7 (E.D.N.Y. Sept. 2, 2016) ("While

it would be ideal for parties to discover and submit all relevant case law before a motion is fully

briefed, it is fairly standard practice for parties to occasionally send letters or to otherwise file

supplemental authority after briefing is complete." (citations and quotation marks omitted)); *see*

*also DeSimone v. Select Portfolio Servicing Inc.*, 20-CV-3837 (PKC), 2023 WL 6450236, at *4

(E.D.N.Y. Sept. 30, 2023) (noting that while court's individual rules require the filing of motion

papers in accordance with a court-approved briefing schedule, there is no such requirement for

filing supplemental authority).  Yet, Plaintiff failed to do so.[13]  Instead, despite that *Desrosiers* is

entirely on-point precedent from a court in this District, Plaintiff merely stands on its renewed

Motion containing the same arguments that the *Desrosiers* court rejected.  Without any explanation

---

[13] Given the Court's warning in *Monroe* to U.S. Bank (and its counsel, Gross Polowy) to not claim federal jurisdiction
"if it either lacks an arguable basis for doing so or does not wish to invest the effort required to make its case,"
Plaintiff's failure to alert the Court to the *Desrosiers* decision is especially bold.  *See* 2017 WL 923326, at *5.

from Plaintiff as to whether/how this case differs, this Court finds no reason to depart from the holding in *Desrosiers*.[14]

## II.    PLAINTIFF'S OTHER JURISDICTIONAL ARGUMENTS FAIL.

Plaintiff makes several other arguments regarding subject matter jurisdiction. These arguments are unavailing. First, Plaintiff overarchingly argues that because it "commenced this action in its capacity as Trustee for the RMAC Trust, Series 2016-CTT . . . the Trustee's citizenship is all that matters." Pl.'s Mem. Supp. at 9. This assertion—no matter how convincing it sounds at face value—"misses a critical step," as it ignores the rule that a trustee must be the real party in interest for its citizenship to control. *Okunola*, 2023 WL 9507759, at *3 ("each case that the plaintiff cites from this Circuit—whether decided before or after *Americold*—has examined the trust agreement before exercising jurisdiction; the courts in those cases did not automatically conclude that there was jurisdiction simply because the trustee brought the lawsuit in its own name."); *see U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., Nat'l Ass'n v. Casimo*, 21-CV-1372 (GTS/DJS), 2023 WL 2624325, at *1 (N.D.N.Y. Mar. 24, 2023) ("the Court questions whether it

---

[14] This Court knows of another case, *U.S. Bank v. Swezey*, in which Plaintiff, in its capacity as Trustee for the RMAC Trust, Series 2016-CTT, and represented by Gross Polowy, sought foreclosure of a property under New York law. *See U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey*, 20-CV-91 (FB) (RLM), 2022 WL 1422841 (E.D.N.Y. Mar. 24, 2022), *report and recommendation adopted*, 2022 WL 2390989, (E.D.N.Y. July 1, 2022). In *Swezey*, the Court summarily concluded that there was diversity jurisdiction. *See* 2022 WL 1422841, at *1 n.1. However, Plaintiff there, as here, failed to cite or otherwise present *Desrosiers* to the Court—despite Judge Wicks having issued his decision in *Desrosiers over two months before* Plaintiff filed its second motion for default judgment in *Swezey*. *See* Pl.'s Second Mot. Default Judgment, 20-CV-91 (FB) (RLM), ECF Nos. 33, 33-1. The Court in *Swezey* was likely unaware of *Desrosiers*—due to Plaintiff's failure to raise it—and accordingly did not analyze or address the issue. This case is therefore distinguishable from *Swezey*.

Similarly, this Court knows of a case, *U.S. Bank v. McDermott*, in which Plaintiff, in its capacity as Trustee for the RMAC Trust, Series 2016-CTT, and represented by Gross Polowy, sought foreclosure of a property under New York law. *See U.S. Bank Nat'l Ass'n, as Tr. for the RMAC Tr., Series 2016-CTT v. McDermott*, 20-CV-352 (KMK), 2022 WL 2392522 (S.D.N.Y. July 1, 2022). There, as in *Swezey*, the Court concluded that there was diversity jurisdiction, even noting the Trust Agreement and POA in a footnote, but citing to no specific provisions. *See id.*, at *3, *3 n.2. However, it would appear, based on the Court's decision, that Plaintiff failed in that instance, as it did here, to notify the Court of *Desrosiers* after Judge Wicks issued his decision. *See* Docket No., 20-CV-352. Therefore, the Court in *McDermott* was likely unaware of *Desrosiers*—due to Plaintiff's failure to raise it—and, as such, did not analyze or address it. Accordingly, this case is also distinguishable from *McDermott*.

possesses subject-matter jurisdiction over this action . . . because, despite the fact that Plaintiff is suing in its own name as a trustee, Plaintiff has not alleged facts plausibly suggesting whether or not it is an 'active' trustee whose control over the assets held in its name is 'real and substantial.'").

In making this argument, Plaintiff leans on a quote from *Americold* where, in dicta, the Court stated that "when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." 577 U.S. at 383. However, in *Okunola*, the Court rejected the very same point, explaining that the quote from *Americold* does not negate *Navarro*'s rule. 2023 WL 9507759, at *3. As Judge Donnelly spelled out in *Okunola*:

> The plaintiff relies on a sentence in *Americold*—that a trustee's "citizenship is all that matters for diversity purposes" when the "trustee files a lawsuit or is sued in her own name." 577 U.S. at 383 (citing *Navarro*, 446 U.S. at 462–66). But the Supreme Court did not undo *Navarro*'s test for traditional trusts in that single-sentence dictum; indeed, the Court invoked *Navarro*. *Id.* Rather, the Court distinguished a traditional trust from a Maryland creation that "call[ed] itself a trust" but was actually a "separate legal entity" capable of suing in its own right. *Id.* (internal quotation marks and citation omitted).

*Id.*

In the end, Plaintiff cannot escape *Navarro*'s requirement that its citizenship only controls if it is a real and substantial party in interest (as determined from the Trust Agreement). To be sure, when Plaintiff made the same argument in *Desrosiers*, Judge Wicks quickly dispensed with it, as it "ignore[d] the applicable legal framework that Judge Tomlinson previously provided the parties in painstaking detail." 2021 WL 5630899, at *3.

Second, Plaintiff notes that courts in the Second Circuit have found that "trustees of mortgage-backed securities trusts are the 'real and substantial parties' to controversies related to mortgage-backed securities." Pl.'s Mem. Supp. at 13–17. Though true, the courts in those cases did not, as Plaintiff seems to suggest, automatically conclude that there was subject matter jurisdiction simply because those trusts were mortgage-backed securities trusts. *See Okunola*,

2023 WL 9507759, at *3 (noting that the plaintiff cited the following cases to support this argument, which Plaintiff also cites here: *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC*, No. 16-CV-9112, 2017 WL 2684069, at *3 (S.D.N.Y. June 21, 2017); *Ullah*, 2014 WL 470883, at *3–4). Rather, the courts in those cases analyzed the trusts' governing instrument(s) to determine that the trustees were the real parties in interest. *See, e.g.*, *U.S. Bank, Nat'l Ass'n solely in its capacity as Tr. of Mastr Adjustable Rate Mortgs. Tr. 2006-OA2, Mastr Adjustable Rate Mortgs. Tr. 2007-1, and Mastr Adjustable Rate Mortgs. Tr. 2006-3 v. UBS Real Est. Sec., Inc.*, 205 F.Supp.3d 386, 409–10 (S.D.N.Y. 2016). For example, in *UBS Real Estate*, a case Plaintiff cites, the Court, following *Navarro*, analyzed the trust's governing documents to conclude that the trustee was the real and substantial party to the controversy. *See id.* The Court did not, however, automatically conclude that the trustee's citizenship controlled simply because the trust was a mortgage-backed securities trust. *See generally id.*

Third, Plaintiff argues that a trustee must be the named party in a suit because, under New York law, a trust may not sue or be sued in its own name. *See* Pl.'s Mem. Supp. at 14–15. However, that can be said of a variety of trusts as, "[u]nlike a corporation, a trust—at least a traditional one that establishes a 'fiduciary relationship'—is 'not a thing that c[an] be haled into court.'" *Okunola*, 2023 WL 9507759, at *3 (citing *Americold*, 577 U.S. at 383). "And it does not answer the question of whether the *trustee* can sue in its 'own right, without regard to the citizenship of the trust beneficiaries.'" *Id.* (citing *Navarro*, 446 U.S. at 465–66) (emphasis added).[15]

---

[15] To that end, Plaintiff cites various New York state court cases purportedly holding that "trustees as legal owners of the trust estate generally sue and are sued in their own capacity [because] the trust itself does not have the capacity to act." *See* Pl.'s Mem. Supp. at 14–15. However, Plaintiff does not explain how, if at all, these cases support the notion that federal courts would have subject matter jurisdiction to hear cases from trustee-plaintiffs who are not real parties in interest. *See id.*

Similarly, Plaintiff cites *Raymond Loubier Irrevocable Tr. v. Loubier* for the proposition that a "common-law trustees' citizenship – not that of its beneficiaries – matters for purposes of diversity because 'the party trusts can only sue or be sued in the names of their trustees.'" Pl.'s Mem. Supp. at 8; *see* 858 F. 3d 719, 722 (2d. Cir. 2017). However, *Loubier* is not on point. In *Loubier*, trusts were the named parties to the suit, leading the Court to hold that "pleadings in the names of the trusts themselves do not require that these parties' citizenship, for purposes of diversity, be determined by reference to all their members . . . Rather, these traditional trusts' citizenship is that of their respective trustees." *Id.* at 732. The Court in *Loubier* explicitly recognized, however, that *Navarro*, by contrast, "had nothing to do with the citizenship of the 'trust' at issue . . . Rather, 'it was a suit by the trustees in their own names,' . . . and thus presented 'the quite separate question' of whether these trustees, who 'were undoubted "citizens"' (viz., natural persons) were the real parties to the controversy." *Id.* at 728 (quoting *Americold*, 577 U.S. at 382–83). Here, as Plaintiff is a trustee, and not a trust, this Court follows *Navarro*'s rule that the Trustee's citizenship, rather than that of the Trust Beneficiary, controls for diversity purposes if the Trustee is the real party in interest. *See Navarro*, 446 U.S. at 464–65. This case does not implicate *Loubier*'s rule that the citizenship of a named party trust is determined by the citizenship of its trustee. *See Ullah*, 2014 WL 470883, at *4 (noting that where a trustee, rather than a trust, files a case, caselaw concerning a *trust*'s citizenship does not apply). As such, Plaintiff's additional arguments for subject matter jurisdiction fail, and do not save Plaintiff from its failure to show that it is the real party in interest based on the Trust Agreement.[16]

---

[16] Plaintiff's remaining assertions concerning subject matter jurisdiction are redundant and rely on out-of-Circuit caselaw. *See generally* Pl.'s Mem. Supp. at 7–17. For reasons already explained, this Court rejects those assertions.

### III. PLAINTIFF FAILS TO PLEAD DIVERSITY JURISDICTION BASED ON ROOSEVELT'S CITIZENSHIP.

As this Court has determined that U.S. Bank is not the real and substantial party in interest to this action based on the Trust Agreement, this Court looks to the citizenship of the Trust Beneficiary, Roosevelt. *See id.* at *3. However, Plaintiff does not allege Roosevelt's citizenship, and fails to even mention Roosevelt in either the Complaint or the Memorandum of Law in support of the Motion. Accordingly, this Court will not endeavor to determine Roosevelt's citizenship.[17] Ultimately, Plaintiff bears the burden to show that subject matter jurisdiction exists, and Plaintiff has failed to meet that burden here. *See Desrosiers*, 2021 WL 5630899, at *5 ("In light of Plaintiff's failure to allege the citizenship of the beneficiary of the Trust, this Court concludes that it does not have subject matter jurisdiction over this dispute."); *see also Licata*, 2017 WL 2671421, at *2 ("plaintiff 'has included no allegations concerning . . . its degree of control over the trust assets, or, alternatively, the citizenships of the trust's beneficiaries . . . Accordingly, plaintiff has failed to allege facts sufficient to establish that this Court has subject matter jurisdiction over the instant matter. (internal citations omitted)). As such, this Court lacks subject matter jurisdiction over this action.

### CONCLUSION

The fact is—and U.S. Bank and its counsel should be so advised—that the New York state courts are at Plaintiff's disposal. State court is well-equipped to oversee mortgage foreclosure actions, especially those brought under N.Y. RPAPL Article 13. *See Monroe*, 2017 WL 923326, at *5 ("If a case is significant enough to warrant a federal forum . . . showing jurisdiction is a reasonable price of admission. If not, the courts of New York are perfectly capable of handling a

---

[17] This Court notes, however, that according to the Trust Agreement, Roosevelt's mailing address is in New York. *See* Trust Agreement at 27. Assuming Roosevelt's citizenship is, indeed, New York, the Parties would not be diverse, and this Court would not have subject matter jurisdiction over this case.

foreclosure action for nonpayment of a mortgage (perhaps even more so than a federal district court).").  Yet, and despite the issues discussed above, Plaintiff insists on pursuing this action in this Court.  However, the Court should not permit Plaintiff, or its counsel, to skirt the jurisdictional requirements of federal court.

For the foregoing reasons, this Court respectfully recommends that the District Court DENY Plaintiff's Motion and DISMISS the action without prejudice for lack of subject matter jurisdiction.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Under 28 U.S.C. § 636(b)(1) and Federal Rule 72(b)(2) of Civil Procedure, the Parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**


          _/s/_____

Steven Tiscione
United States Magistrate Judge
Eastern District of New York


Dated:  Central Islip, New York
December 26, 2024